IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COLTON J. NOVASCONE,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL DANAHER, P.A., N.D.C.S.;<br><br>Defendant. | 8:19CV201<br><br>MEMORANDUM AND ORDER |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing 58.) For the reasons that follow, the Motion is granted.

## I. BACKGROUND

Plaintiff Colton Novascone, an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"), filed the operative Amended Complaint on December 19, 2019. (Filing 11.) Plaintiff claims Defendant Daniel Danaher, an NDCS Physician's Assistant, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because Defendant prescribed medication to which Plaintiff had a known allergy. (*Id.* at CM/ECF p. 5.)

Defendant filed his Motion for Summary Judgment on February 14, 2022. (Filing 58.) Along with his motion, Defendant filed a brief in support (filing 60) and an Index of Evidence (filing 59). Plaintiff filed his brief in opposition with an attached index and exhibits (filing 64) on March 7, 2022. Defendant filed a reply brief (filing 67) on March 15, 2022.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not the court's function to weigh evidence

in the summary judgment record to determine the truth of any factual issue. *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial, and must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 256-57 (quotations omitted); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-60 (1970).

### III. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id*.

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id*.

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).

In accordance with the court's local rules, Defendant's brief (filing 60) includes "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to

3

judgment as a matter of law." NECivR 56.1(a)(1). The material facts below, appearing in numbered paragraphs, are those that have not been properly disputed by Plaintiff pursuant to the court's local rules. Plaintiff did not directly respond to several of Defendant's numbered statements of fact. Accordingly, those facts are considered admitted. *See* NECivR 56.1(b). To the extent admissible, the court has considered the index and evidence attached to Plaintiff's brief in opposition (filing 64 at CM/ECF pp. 15-30). The court notes that Plaintiff's evidence appears to include medical and prison records already submitted in Defendant's Index of Evidence (filing 59).

As noted above, the court has not considered Plaintiff's legal conclusions and arguments asserted as facts because such statements are not admissible to oppose summary judgment. Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

## IV. RELEVANT UNDISPUTED MATERIAL FACTS

1.   Plaintiff has been in the custody of the NDCS since 2010. (Filing 59-12, Novascone Dep. 9:2-3, at CM/ECF p. 6.) As it relates to his claims, Plaintiff was housed at Lincoln Correctional Center ("LCC") at all relevant times. (Filing 11 at CM/ECF p. 4.)

2.   Prior to January 15, 2019, the only reason Plaintiff believed he was allergic to Penicillin (and maybe Penicillin derivatives) was because, when he was "very young," his mother told him that she and two other relatives were allergic to Penicillin. (Filing 59-12, Novascone Dep. 20:1-14, at CM/ECF p. 12; Filing 59-3 at CM/ECF p. 13; Filing 59-1 at CM/ECF p. 3, ¶ 6.)

3.   Plaintiff is unaware of whether his mother or other relatives had a test to determine whether they were allergic to Penicillin. (Filing 59-12, Novascone Dep. 21:4-7, at CM/ECF 13.) Plaintiff is unaware of whether he has ever had a test to determine whether he is allergic to Amoxicillin or Penicillin. (Filing 59-12, Novascone Dep. 33:2-4, at CM/ECF p. 18.)

4. Prior to January 8, 2019, Amoxicillin was prescribed and administered to Plaintiff in May of 2018. (Filing 59-3 at CM/ECF pp. 56-57.) Likewise, Augmentin, which is an antibiotic that contains Amoxicillin, was prescribed to Plaintiff on June 15, 2017. (Filing 59-3 at CM/ECF pp. 56-59; *see also* Filing 59-12, Novascone Dep. 42:6–43:8, CM/ECF pp. 22-23.) Plaintiff does not deny that he was previously prescribed antibiotics but asserts that he refused them and never took them. Plaintiff does not identify support in the record for this assertion.

5. Defendant presented evidence that for medical professionals, when approaching a patient who has not experienced any past symptoms of an allergy to Penicillin products, but who relates an allergy to Amoxicillin because of first-degree relatives having such allergy, the standard of care to is to treat the patient as anyone without a Penicillin allergy. (Filing 59-10 at CM/ECF pp. 4-5, ¶ 17.) Plaintiff does not controvert this testimony but alleges that he has consistently maintained that he is allergic to Penicillin and its derivatives. He does not cite to any evidence in the record to support this assertion. Defendant presented evidence that Plaintiff believed his mother was allergic. (*See* Filing 59-1 at CM/ECF p. 3, ¶ 6; Filing 59-3 at CM/ECF p. 13 (Defendant notes in Plaintiff's medical charts: "I recall talking to patient last week about this he told me he was not allergic but mother was and we agreed with Amoxl rx last week—today I put in ATG PCN GI Rxn.").

6. Plaintiff experienced numerous gastrointestinal ("GI") issues in the years prior to being prescribed Amoxicillin on January 8, 2019. (*See* Filing 59-3 at CM/ECF pp. 21, 23, 24, 25, 28, 60, 61, 62, 63, 64, 67, 69, 72, 83, 84, 85, 95, 96, 97.)

7. Since approximately March of 2019, the only GI issues that Plaintiff continues to experience is diarrhea, approximately once a month—depending on what he eats. (Filing 59-12, Novascone Dep. 78:1-11, at CM/ECF p. 29; *see also id.* 80:1-8, at CM/ECF p. 31.)

8. On January 8, 2019, Plaintiff met with Defendant at the LCC medical clinic. (Filing 59-1 at CM/ECF p. 2, ¶ 5.) Plaintiff presented with sinus congestion, a sore throat that was worsening, a constant headache, and sharp pain on the frontal

5

region of his face. (Filing 59-1 at CM/ECF p. 2-3, ¶ 5; Filing 59-3 at CM/ECF pp. 15-16.) Defendant diagnosed Plaintiff as suffering from sinusitis—also known as a sinus infection. (Filing 59-1 at CM/ECF p. 3, ¶ 5; Filing 59-3 at CM/ECF p. 16.)

9. Plaintiff's medical records reflect that he had been prescribed Amoxicillin in 2018, as well as Augmentin in 2017 without any noted incident. (Filing 59-3 at CM/ECF pp. 56-59.)

10. During that January 8, 2019 appointment, Defendant and Plaintiff discussed Plaintiff's perceived allergy to Penicillin. (Filing 59-1 at CM/ECF p. 3, ¶ 6; Filing 59-3 at CM/ECF p. 13.) Plaintiff informed Defendant that his mother was allergic to the drug. (Filing 59-1 at CM/ECF p. 3, ¶ 6; Filing 59-3 at CM/ECF p. 13.)

11. Defendant prescribed Plaintiff Amoxicillin because, in his medical judgment, Amoxicillin was an appropriate medication to treat Plaintiff's sinus infection because of Plaintiff's medical history, the effectiveness of the medication for his symptoms, and no confirmed instances of Plaintiff having an allergic reaction to Penicillin. (Filing 59-1 at CM/ECF pp. 3, 5, ¶¶ 6, 15; Filing 59-3 at CM/ECF p. 16.)

12. At that same appointment, Defendant and Plaintiff also discussed his longstanding GI issues. (Filing 59-1 at CM/ECF p. 3, ¶ 7; Filing 59-3 at CM/ECF p. 15.)

13. Plaintiff began experiencing diarrhea on or about January 12, 2019—approximately four days after being prescribed Amoxicillin. (Filing 59-3 at CM/ECF pp. 10, 78.) Plaintiff disputes the date his diarrhea started and alleges that "other allergic symptoms" started earlier. He does not identify the other symptoms, nor does he provide any evidence of other symptoms.

14. According to Defendant's medical expert, Amoxicillin allergic reactions are usually manifested by the onset of swelling and rash within several minutes to a few hours of administration, and rapidly respond to treatment. (Filing

6

59-10 at CM/ECF p. 4, ¶ 13.)

15. On or about January 14, 2019, Plaintiff stopped taking the Amoxicillin. (Filing 59-3 at CM/ECF p. 14.)

16. On January 15, 2019, Plaintiff submitted an Inmate Interview Request ("IIR") to the medical clinic asking to be "seen ASAP about [his] stomach" because he had been experiencing "diarrhea for 3 days and [was] in pain." (Filing 59-3 at CM/ECF p. 78; *see also* Filing 11 at CM/ECF p. 5.)

17. At 7:30 p.m. on January 15, 2019, Plaintiff was taken to the medical clinic by security where a licensed practical nurse administered Nurse Treatment Protocol 13—Diarrhea, on Plaintiff. (Filing 59-3 at CM/ECF pp. 10, 15.)

18. During administration of Treatment Protocol 13, Plaintiff reported, among other things, 1) his diarrhea began 3 days prior with his last normal stool occurring four days ago, 2) nausea and vomiting, and 3) having had abdominal pain for the previous 3-4 months. (Filing 59-3 at CM/ECF pp. 10, 15.) He also reported having a history of irritable bowel syndrome. (Filing 59-3 at CM/ECF p. 10.)

19. Plaintiff was instructed to notify medical staff if his symptoms worsened and was scheduled for a follow-up appointment for the following day. (Filing 59-3 at CM/ECF pp. 10, 15.)

20. Defendant was not present, nor did he see Plaintiff that evening. (Filing 59-1 at CM/ECF p. 3, ¶ 8.)

21. On January 16, 2019, medical clinic personnel instructed unit staff that Plaintiff could come to sick call (the medical clinic) to be evaluated by the provider, but Plaintiff never showed-up at the clinic. (Filing 59-3 at CM/ECF pp. 14-15; *see also* Filing 59-6 at CM/ECF p. 3.) Plaintiff does not dispute that he failed to arrive at the clinic but indirectly asserts, without evidence, that his absence may have been attributable to the process of transporting a prisoner to the clinic.

22. On January 17, 2019, Defendant met with Plaintiff in the medical clinic

where he complained of abdominal pain, diarrhea every 10 minutes, and blood in his stool. (Filing 59-1 at CM/ECF p. 4, ¶ 10; Filing 59-3 at CM/ECF pp. 13-14.) In the event these symptoms were a possible GI reaction to the Amoxicillin, Defendant instructed Plaintiff to discontinue the medication; however, Plaintiff had already stopped taking the medication three days earlier. (Filing 59-1 at CM/ECF p. 4, ¶ 10; Filing 59-3 at CM/ECF pp. 13-14.)

23. To treat his symptoms, Defendant gave Plaintiff Phenegran (Promethazine) to help control his pain, nausea, and vomiting, and provided him a bottle of Pepto Bismol and educated Plaintiff how to use it. (Filing 59-1 at CM/ECF p. 4, ¶ 11; Filing 59-3 at CM/ECF p. 13.) Defendant also suggested Plaintiff maintain a liquid diet for the next 48 hours, but Plaintiff declined the recommended liquid diet because he was already on a "bland diet." (Filing 59-1 at CM/ECF p. 4, ¶ 11; Filing 59-3 at CM/ECF p. 13.) Defendant also ordered an occult blood test of Plaintiff's stool and made a note in his chart for Plaintiff to be checked on rounds for the following day. (Filing 59-1 at CM/ECF p. 4, ¶ 11; Filing 59-3 at CM/ECF p. 13.) Lastly, Defendant scheduled Plaintiff for a follow-up appointment for the following week. (Filing 59-1 at CM/ECF p. 4, ¶ 11; Filing 59-3 at CM/ECF p. 13.)

24. On January 22, 2019, Defendant saw Plaintiff for their scheduled follow-up appointment. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.) Though Plaintiff reported still experiencing diarrhea, he estimated having only 3-4 stools per day while on his bland diet. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.) Plaintiff also reported having received some benefit from the Phenegran (Promethazine)—accordingly, Defendant continued him on the medication. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.) Defendant assessed Plaintiff's condition as improving. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.)

25. From January 19, 2019, through February 2, 2019, Plaintiff did not send any IIRs to the medical clinic complaining of ongoing stomach issues or asking to be seen by medical. (Filing 59-3 at CM/ECF pp. 76-78; Filing 59-12, Novascone Dep. 68:6-10, at CM/ECF p. 24.)

26. At no time between January 8, 2019, to February 3, 2019, did Defendant delay or deny treatment to Plaintiff. (Filing 59-1 at CM/ECF p. 5, ¶ 16.)

27. At some point after 5:33 a.m. on Sunday, February 3, 2019, Plaintiff submitted an emergency inmate interview request to medical stating, "I need HELP. My stomach I've been having water runs and bleed in it and throw up. 2:35 am – 5:33am. Please Help." (Filing 59-3 at CM/ECF p. 76.)

28. The medical clinic was notified/contacted by security of Plaintiff's issues that morning at or around 6:30 a.m. (Filing 59-3 at CM/ECF p. 7.) He arrived at the medical clinic at or around 7:55 a.m. (Filing 59-3 at CM/ECF p. 7.) During intake, Plaintiff reported having a past history of IBS. (Filing 59-3 at CM/ECF p. 7.) Dr. Timothy Chamberlain, an NDCS medical provider, was notified of Plaintiff's condition and symptoms at or around 8:00 a.m. by the medical clinic's on-duty licensed practical nurse. (Filing 59-3 at CM/ECF pp. 7-8.) By 8:15 a.m., Dr. Chamberlain ordered 2mg of Imodium be given to Plaintiff and ordered him to be sent to an emergency room at Bryan Medical Center West ("Bryan West") for further evaluation. (Filing 59-3 at CM/ECF p. 8.) Plaintiff left for Bryan West at or around 8:30 a.m. (Filing 59-3 at CM/ECF p. 8.)

29. While at Bryan West, Plaintiff reported to a physician that, among other things, he had bloody stools and abdominal pain, but has had intermittent abdominal pain for several months. (Filing 59-3 at CM/ECF p. 40.) He also stated that he developed a gradual onset of bright red bloody stools the previous day and had been placed on Amoxicillin approximately three weeks earlier. (Filing 59-3 at CM/ECF p. 40.)

30. While at Bryan West, Plaintiff underwent numerous labs, imaging tests, and physician evaluations. (*See* Filing 59-3 at CM/ECF pp. 40-55.) The Bryan West treatment provider ended up giving Plaintiff:

> Bentyl for crampy abdominal pain in addition to a liter normal saline. Zofran was given for nausea. He was given a dose of ciprofloxacin and Flagyl for presumed infectious diarrhea given the fact that he was recently placed on

9

>  Amoxicillin and then subsequently developed some bloody stools. CT scans show no acute findings. . . . Patient be sent out on ciprofloxacin and Flagyl to be taken as prescribed. . . . We will treat for C. difficile colitis and other enteroinvasive bacteria.

(Filing 59-3 at CM/ECF pp. 44-45.)

31. Bryan West treatment providers diagnosed Plaintiff with 1) Lower Abdominal Pain, and 2) Diarrhea of infectious origin. (Filing 59-3 at CM/ECF p. 45.)

32. Plaintiff was discharged from Bryan West and returned to LCC at or around 2:15 p.m. that same day. (Filing 59-3 at CM/ECF p. 9.) Plaintiff was not diagnosed with an allergic reaction to Amoxicillin. (*See* Filing 59-3 at CM/ECF pp. 40-55.). Plaintiff alleges—and Defendant admits—that no allergy test was administered to confirm or deny Plaintiff's allergy to Penicillin while at Bryan West on February 3, 2019. (Filing 64 at CM/ECF p. 8; Filing 67 at CM/ECF pp. 19-20.)

33. Plaintiff asserts that a note on Plaintiff's medical chart, entered on January 17, 2019, shows Defendant added an allergy to Amoxicillin. (*See* Filing 64 at CM/ECF p. 8.) However, the note in its entirety does not support Plaintiff's assertion. Defendant noted in Plaintiff's medical chart: "I recall talking to patient last week about this he told me he was not allergic but mother was and we agreed with Amoxl rx last week—today I put in ATG PCN GI Rxn." (Filing 59-3 at CM/ECF p. 13.)

## V. DISCUSSION

Plaintiff claims Defendant was deliberately indifferent to his serious medical needs in two ways. First, Plaintiff claims Defendant was deliberately indifferent to Plaintiff's medical condition when he prescribed Plaintiff Amoxicillin to treat a sinus infection "without noting [his] listed allergy to that medication." (Filing No. 11 at CM/ECF p. 5.) Plaintiff speculates that his allergic reaction to Amoxicillin "resulted in internal damage . . . causing [him] pain and bleeding in his stomach, and

perhaps permanent damage." *Id*. Second, Plaintiff claims Defendant failed to treat Plaintiff's GI issues after taking the Amoxicillin.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (alteration in original). "When [a] prisoner 'alleges deliberate indifference to current existing health problems . . . the inmate must prove deliberate indifference to a serious medical need.'" *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quoting *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)). The test for deliberate indifference consists of two prongs: "First, an inmate must show that he 'suffered from an objectively serious medical need.'" *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018) (quoting *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011)). "Second, an inmate must show that the defendant knew of and deliberately disregarded that need." *Id*. For the reasons stated below, Plaintiff has not presented evidence that satisfies either prong for either of his claims of deliberate indifference.

## A. Alleged Amoxicillin Allergy

### 1. First Prong: Objectively Serious Medical Need

Plaintiff failed to establish either prong of his deliberate indifference claim related to his alleged allergy to Amoxicillin. First, Plaintiff failed to show an objectively serious medical need because the evidence does not establish that he is allergic to Amoxicillin or any other Penicillin derivative. "[T]he objective portion of the deliberate indifference standard 'requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury.'" *Schaub v. VonWald*, 638 F.3d 905, 916 (8th Cir. 2011) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1243 (8th Cir. 1997)). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson

11

would easily recognize the necessity for a doctor's attention." *Id*. (internal quotations and citations omitted).

Plaintiff asserts that he is allergic to Amoxicillin and this allergy was listed or documented in his medical file. (Filing 11 at CM/ECF pp. 4-5.) However, as noted above, while Plaintiff reported that he believed he was allergic to Penicillin, this was not based on an actual allergy test (*see* filing 59-12, Novascone Dep. 31:2-4, at CM/ECF p. 18), nor is there any evidence of a previous reaction to Penicillin or a Penicillin derivative like Amoxicillin. Plaintiff testified that other than taking the Amoxicillin in January of 2019, he never had an allergic reaction to any other kind of medication. (Filing 59-12, Novascone Dep. 30:10-18 at CM/ECF p. 16.) Plaintiff's only basis for believing he was allergic was that his mother told him that she, his brother, and his great aunt were allergic to Penicillin. (*See* Filing 59-12, Novascone Dep. 19:23-20:14, at CM/ECF pp. 11-12.)

Other than this belief, Plaintiff does not controvert his medical records and Defendant's Declaration that Plaintiff had been prescribed Amoxicillin or another medication containing that drug prior to January 2019. (*See* Filing 59-1 at CM/ECF p. 3, ¶ 6; Filing 59-3 at CM/ECF pp. 56-57.) The medical records indicate that Plaintiff was prescribed Amoxicillin in May 2018 (*see* filing 59-3 at CM/ECF p. 56-57), and Augmentin (which contains Amoxicillin) in June 2017 (filing 59-3 at CM/ECF p. 58-59; *see also* filing 59-1 at CM/ECF p. 3, ¶ 6). Despite having been prescribed Amoxicillin at least twice previously, Plaintiff admitted that other than his stomach issues in January of 2019, he had no allergic reaction to any other kind of a medication. (*See* Filing 59-12, Novascone Dep. 30:10-13, at CM/ECF p. 16; *see also* filing 59-12, Novascone Dep. 25:8-11, at CM/ECF p. 15 ("Is it possible that in the past when you have taken a medication that your stomach hurt afterward?" A: "No.").) Nor is there any indication in his medical record that he reported any adverse side-effects after being prescribed those medications in 2017 and 2018.

In sum, there is no evidence that Plaintiff was allergic to Amoxicillin and the unrefuted record shows Plaintiff was previously prescribed Amoxicillin without

incident. Accordingly, Plaintiff has not shown that he suffered from an objectively serious medical need.

### 2. Second Prong: Deliberate Indifference to Serious Medical Need

Even if Plaintiff had an objectively serious medical need, there is no evidence that Defendant was deliberately indifferent to it. Deliberate indifference requires "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). Deliberate indifference "is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub*, 638 F.3d at 914-15 (internal quotation and citation omitted). While obvious risk of harm to a prisoner justifies an inference that prison officials disregarded substantial risk to the inmate, "[d]eliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id.* at 915 (internal quotation and citation omitted).

There is no evidence that Defendant ignored or disregarded a reported allergy to Penicillin or its derivatives when Defendant prescribed Amoxicillin. The record shows that in Defendant's independent medical judgment, Amoxicillin was appropriate to treat Plaintiff's sinus infection. Defendant based his judgment on Plaintiff's medical history, the effectiveness of the medication for his symptoms, and no confirmed instances of him having an allergic reaction to Penicillin. (Filing 59-1 at CM/ECF pp. 3, 5, ¶¶ 6, 15; Filing 59-3 at CM/ECF p. 16.) Defendant presented evidence through his medical expert, Dr. Shiffermiller, the standard of care for a patient without any past symptoms of allergy to Penicillin products "is to treat the patient as you would anyone without a Penicillin allergy" even if the patient reports first-degree relatives with a Penicillin allergy. (Filing 59-10 at CM/ECF pp. 4-5, ¶ 17.) The undisputed evidence shows Defendant adhered to this standard when he prescribed Amoxicillin to Plaintiff where Plaintiff had previously been treated with

13

Amoxicillin, did not have a reported allergy, and Amoxicillin appeared to be an adequate treatment. Based on the evidence in the record, Defendant's actions do not constitute deliberate indifference.

## B. Alleged Failure to Treat GI Issues

### 1. Exhaustion of Administrative Remedies

Although the record shows Plaintiff exhausted his administrative remedies with respect to his Amoxicillin allergy claim, there is no evidence that he did so with his claim that Defendant failed to treat Plaintiff's GI issues after taking the Amoxicillin. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "The PLRA requires prisoners to exhaust administrative remedies before filing § 1983 actions." *Cole v. Isherwood*, 716 N.W.2d 36, 42 (Neb. 2006). The PLRA's exhaustion requirement applies to all suits regarding prison life. *Porter v. Nussle*, 534 U.S. 516 (2002); *see also Booth v. Churner*, 532 U.S. 731 (2001).

NDCS adopted and promulgated 68 Neb. Admin. Code, ch. 2 for inmate grievance procedures. (*See* Filing 59-4 at CM/ECF p. 1, ¶ 3.) NDCS utilizes a three-step grievance process. (*Id.* at 2, ¶ 5.) Inmates incarcerated in an NDCS facility do not exhaust their administrative remedies until the inmate timely files and receives an adverse decision to his/her Step-Two Grievance form. *Davlin v. Miller*, 2012 WL 3991374, at *3 (D. Neb. Sept. 11, 2012); *Keup v. Hopkins*, 2008 WL 427556, at *4 (D. Neb. Feb. 14, 2008); *Williams v. NSP Med. Servs. Unit*, 2007 WL 1362890, at *1 (D. Neb. Apr. 20, 2007).

Although Plaintiff properly complied with the PLRA with respect to his Amoxicillin allergy claim (*see* filing 59-6), there is no evidence he exhausted his administrative remedies related to his medical treatment from January 8, 2019 to

14

February 2, 2019. Defendant submitted evidence that between January 1, 2019 and May 1, 2019, Plaintiff only completed the entire NDCS grievance process in two instances. (Filing 59-4 at CM/ECF p. 7, ¶ 18.) But in his first grievance in that period, Plaintiff failed to discuss any alleged delay or quality of treatment after he was prescribed the Amoxicillin in his Step-Two Grievance. (*See* Filing 59-6.) His second grievance alleged Plaintiff experienced GI issues beginning at 2:30 a.m. on February 3, 2019, but was not seen at the medical clinic until approximately 8:00 a.m. (*See* Filing 59-7.)

Neither of these grievances addressed Plaintiff's claim that he did not receive treatment, that medical staff discontinued the "wrong medication" after one week, or that Defendant refused to see or diagnose Plaintiff. Accordingly, there is no evidence that Plaintiff exhausted his remedy as to this claim.

### 2. Disagreement With Treatment

Even if Plaintiff's grievances can be broadly read to include his claim that Defendant failed to treat Plaintiff's GI issues, Plaintiff's claim amounts to disagreement with the treatment he received. To recover under section 1983, as Plaintiff seeks to do here, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii*, 512 F.3d at 499 (internal quotation and citation omitted); *see also Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 389 (8th Cir. 2014) ("medical malpractice is not deliberate indifference") (citing *Dulany*, 132 F.3d at 1242 ("[S]howing that another physician might have ordered different tests and treatment does not show deliberate indifference.") and *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) ("[Plaintiff] has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference.")); *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (prisoner's mere disagreement with course of medical treatment fails to state claim against prison physician for deliberate indifference under Eighth Amendment).

15

Plaintiff asserts he experienced "[p]ain, blood in vomit and stool" but "[d]id not receive treatment, medical staff merely discontinued wrong medication after one week. Daniel Danaher refused to see me or diagnose my condition, or follow up on [the] problem. . . ." (Filing 11 at CM/ECF p. 5.) However, the undisputed evidence shows Defendant treated Plaintiff's GI issues. On January 15, 2019, Plaintiff reported stomach pain and diarrhea. On the same day, Plaintiff was taken to the medical clinic by security where a licensed practical nurse administered "Nurse Treatment Protocol 13—Diarrhea." (Filing 59-3 at CM/ECF pp. 10, 15.) Defendant was not present, nor did he see Plaintiff that evening. (Filing 59-1 at CM/ECF p. 3, ¶ 8.) The next day, medical clinic personnel instructed staff that Plaintiff could come to the medical clinic, but Plaintiff never arrived at the clinic. (Filing 59-3 at CM/ECF pp. 14-15; *see also* filing 59-6 at CM/ECF p. 3.)

On January 17, 2019, Defendant met with Plaintiff in the medical clinic where he complained of abdominal pain, diarrhea every 10 minutes, and blood in his stool. (Filing 59-1 at CM/ECF p. 4, ¶ 10; Filing 59-3 at CM/ECF pp. 13-14.) Defendant told Plaintiff to discontinue the Amoxicillin, but Plaintiff indicated that he already stopped taking the medication three days earlier. (*Id.*) To treat his symptoms, Defendant gave Plaintiff medication to control pain, nausea, and vomiting, as well as providing him a bottle of Pepto Bismol. (Filing 59-1 at CM/ECF p. 4, ¶ 11; Filing 59-3 at CM/ECF p. 13.) Defendant also suggested Plaintiff maintain a liquid diet for the next 48 hours, but Plaintiff declined because he was already on a "bland diet." (*Id.*)

On January 22, 2019, Defendant saw Plaintiff for a scheduled follow up appointment. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.) Though Plaintiff was still experiencing diarrhea, he estimated having only 3-4 stools per day while on his bland diet. (Filing 59-1 at CM/ECF p. 4, ¶ 12; Filing 59-3 at CM/ECF p. 3.) Plaintiff also reported having received some benefit from medication Defendant prescribed for Plaintiff, so Defendant continued him on it. (*Id.*) Defendant assessed Plaintiff's condition as improving. (*Id.*) From January 19, 2019 through February 2, 2019, Plaintiff did not send any IIRs to the medical clinic complaining

16

of ongoing stomach issues or asking to be seen by medical. (Filing 59-3 at 76-78; Filing 59-12, Novascone Dep. 68:6-10, CM/ECF p. 24.)

Defendant's medical expert, Dr. Shiffermiller, opined that this course of treatment "met the community standard of care related to the Management of Mr. Novascone's reoccurring bowel issues after he began a short course of Amoxicillin to treat a sinus infection." (Filing 59-10 at CM/ECF p. 4, ¶ 16.) Plaintiff presents no contrary evidence that Defendant failed to treat his GI issues or that his treatment fell short of the standard of care. Accordingly, his claim amounts solely to a disagreement with medical treatment and falls short of the deliberate indifference standard.

## VI. CONCLUSION

Plaintiff failed to demonstrate that he suffered from an allergy to Amoxicillin or that Defendant was deliberately indifferent to a serious medical condition. Plaintiff also failed to demonstrate that he exhausted his administrative remedies as to any other claims or that Defendant was deliberately indifferent to any other serious medical conditions.

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (Filing 58) is granted; and

2. A separate judgment will be entered.

Dated this 8th day of August, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge